UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM SCHAEFFER, by and
through his parents, MARK
SCHAEFFER and JENNIFER
SCHAEFFER, and MARK
SCHAEFFER,

       Plaintiffs,

   v.

FULTON COUNTY SCHOOL
DISTRICT and VANEISA
HUTCHINS,

       Defendants.

CIVIL ACTION NO.
1:17-CV-04383-JPB

## ORDER

This matter is before the Court on Fulton County School District's ("Defendant") Motion for Summary Judgment [Doc. 67]. This Court finds as follows:

## PROCEDURAL HISTORY

On November 2, 2017, William Schaeffer, by and through his parents, and Mark Schaeffer (collectively, "Plaintiffs") filed this action against Defendant and Vaneisa Hutchins. [Doc. 1]. Plaintiffs' Complaint contains two causes of action. Id. Count I, which is asserted against Defendant only, alleges that Defendant retaliated against Plaintiffs in violation of the Americans with Disabilities Act

("ADA") and § 504 of the Rehabilitation Act ("§ 504").  <u>Id.</u> at 3.  Count II alleges

that both defendants violated Plaintiffs' procedural due process rights contrary to

42 U.S.C. § 1983.  <u>Id.</u> at 30.  On February 4, 2020, this Court dismissed Count II

of Plaintiffs' Complaint, thus leaving only the retaliation claim against Defendant.

[Doc. 27].  After discovery closed, on November 16, 2020, Defendant filed the

instant Motion for Summary Judgment.  [Doc. 67].  It is now ripe for review.

## BACKGROUND

The Court derives the facts of this case from Defendant's Statement of

Material Facts and Plaintiffs' Statement of Material Facts.  The Court also

conducted its own review of the record.  The facts of this case, for the purpose of

adjudicating the instant motion, are as follows:

Plaintiff William Schaeffer ("William") is a child who suffers from severe

anxiety, depression and attention deficit hyperactivity disorder ("ADHD").  [Doc.

70-1, p. 2].  Because of these disabilities, William receives services from

Defendant under the Individuals with Disabilities Education Act ("IDEA").  <u>Id.</u> at

10.  It is undisputed that William's disabilities make it difficult for him to attend

school in person.  For example, William's school anxiety is so severe that on one

occasion, William tried to climb in the trunk of his car so he would not have to get

out of the car to go into school.  [Doc. 67-15, p. 76].  On another occasion,

William's father had to carry him into the school.  Id. at 33.  On days when William would make it into the school building, he would often self-injure and make himself bleed so that he could go home.  [Doc. 67-11, p. 51].  In fact, because of this anxiety, William has twice been hospitalized in an acute care psychiatric hospital.  Id.

In August 2014, William began school at Ridgeview Charter Middle School ("Ridgeview").  At this time, William's anxiety worsened, resulting in many days of missed school.  [Doc. 70-1, p. 10].  Specifically, by November 5, 2014, William had missed more than twenty-five whole or partial days of school.  Id. at 13.  Throughout the entire school year, William was ultimately absent for sixty-seven days.  Id. at 23.  Notably, William's parents sent at least thirty e-mails to Karin Alhadeff, Ridgeview's § 504 chairperson, to inform her that William would not be attending school on that particular day because of his anxiety.  Id. at 26-27.  William did not receive unexcused absences on these days.  Id. at 27.  In fact, of the sixty-seven absences, only twenty-two were unexcused.  Id. at 28.

Defendant Hutchins is the School Social Worker ("SSW") assigned to Ridgeview, and she was in that role for both the 2014-2015 and 2015-2016 school years.  [Doc. 68-1, p. 3].  As the SSW, Defendant Hutchins's duties include monitoring student attendance reports and addressing student truancy issues.  Id.

Because William's anxiety did not improve during the 2015-2016 school year,

William continued to miss school.  On September 24, 2025, Defendant Hutchins

mailed William's parents a notice that stated that William had accumulated eight

unexcused absences.  Id. at 17-18.  The amount of unexcused absences is disputed.

It is Defendant's contention that William's parents failed to provide documentation

for the absences, and therefore the absences were unexcused.  [Doc. 67-2, p. 7].

Plaintiffs, on the other hand, assert that the absences were not unexcused because

they were directly caused by William's mental health illness.  Moreover, Plaintiffs

maintain that they did provide documentation concerning the absences.

Specifically, William's mother stated that on multiple days in September 2015, she

provided doctor's notes or other parent notes to various school personnel to

address William's absences.  [Doc. 68-4, p. 8].  Moreover, William's mother

presented evidence that William received unexcused absences even on days that

the school nurse sent William home for illness.  Id.  Ultimately, Plaintiffs

presented evidence that showed that William's parents continued, just as they had

the previous year, to give notice to various staff members concerning William's

absences.  [Doc. 70-1, p. 30].

On September 28, 2015, William's father informed Defendant Hutchins and

the assistant principal that William's Individualized Education Program ("IEP")

was not sufficient to help William.  Id. at 33.  On that same day, William's father requested an emergency IEP meeting to advocate for more services for William. Id.  Shortly after William's father requested the emergency IEP meeting, on October 13, 2015, Defendant Hutchins contends that she sent another letter to William's parents regarding his absences.  [Doc. 68-1, p. 27].  In this letter, Defendant Hutchins asserted that William had accumulated nineteen unexcused absences.  Id. at 26.  For the same reasons previously explained, whether these absences were unexcused is a disputed fact.

The emergency IEP meetings, which Defendant Hutchins attended, were held on October 20, October 29 and November 9, 2015.  [Doc. 70-1, p. 37].  It is undisputed that William's parents advocated for William during these meetings. After the second IEP meeting, on November 3, 2015, Defendant Hutchins sent William's parents a third notice and informed them that William had now accumulated twenty-six unexcused absences.  [Doc. 68-1, p. 32].  Defendant Hutchins sent the letter regarding the absences even though she suggested during one IEP meeting that William attend Peachford Hospital's day program.  [Doc. 70-1, pp. 38-39].  Also during the IEP meeting, another school official suggested hospital homebound for William, which is a program for students who have an illness that prevents that student from coming to school.  Id.

On November 9, 2015, before the final IEP meeting, Defendant Hutchins initiated a judicial proceeding against William and his parents by filing a CHINS ("Children in Need of Services") referral with the Fulton County Juvenile Court. [Doc. 68-1, p. 37].  In the referral, Defendant Hutchins asserted that William and his parents were in violation of O.C.G.A. § 15-11-442 because William had forty unexcused absences.  Id. at 54.  O.C.G.A. § 15-11-442 authorizes punishment for both children and their parents.  Id. at 46.  For instance, a child can be placed on probation and ordered to perform community service or attend after-school or evening programs.  Id. at 46-47.  Parents, on the other hand, can be arrested and fined for each unexcused absence.  Id. at 47.

On or about December 18, 2015, in response to the CHINS referral, the Fulton County Juvenile Court held an informal mediation under its Educational Recovery Program ("ERP").  Id. at 56.  Mediation was unsuccessful, and on December 23, 2015, Defendant Hutchins filed a CHINS petition with the Fulton County Juvenile Court.  The petition charged William with being

> habitually and without good and sufficient cause Truant from the Fulton County Board of Education d/b/a Ridgeview Elementary where the child is enrolled, having 10 or more days of unexcused absences, to wit:  said child having been absent 40 days without excuse or exemption, and present 22 days during the first/second semester(s) of the 2015/2016 school year beginning August 10th, 2015 through November 6th, 2015.

[Doc. 1-3, p. 3].  In her petition, Defendant Hutchins represented to the court that "[t]he legally liable school district has determined that the above named child is not suspected to be eligible for services under the federal Individual with Disabilities Education Act or section 504 of the Federal Rehabilitation Act of 1973." Id. at 2.  Ultimately, on April 4, 2016, the Fulton County Juvenile Court dismissed the CHINS petition.  [Doc. 68-3, p. 38].

## DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law.'" <u>Allen</u>, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party." <u>Id.</u>  After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts indicating summary judgment is improper because a material issue of fact does exist.  <u>Id.</u>  However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  If the record, taken as a whole, cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'"  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted).

## B. Retaliation

Plaintiffs allege that Defendant retaliated against them in violation of the ADA and § 504 when Defendant Hutchins filed the CHINS referral and petition with the Fulton County Juvenile Court.  To establish a prima facie case of

retaliation, a plaintiff must show:  (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse action; and (3) that there was a causal link between the protected activity and the adverse action.  Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997).  If a plaintiff establishes a prima facie case of discrimination, the defendant must articulate "legitimate non-discriminatory reasons for its actions that negate the inference of retaliation."  Id.  However, the burden is "merely one of production; it 'need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'"  Chapman v. Al Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).  In the event the defendant is able to articulate one or more legitimate non-discriminatory reasons for its actions, the presumption of discrimination is eliminated, and the burden returns to the plaintiff to show that the defendant's proffered reason for the adverse action is pretextual.  Gilliard v. Ga. Dep't of Corr., 500 F. App'x 860, 864 (11th Cir. 2012).

Defendant does not dispute that William's parents engaged in statutorily protected expression by requesting the IEP meetings or advocating for William during those meetings.  Defendant does, however, argue that Plaintiffs have not established a prima facie case because they have not shown an adverse action or

9

the causal connection.  Alternatively, Defendant argues that Plaintiffs cannot show pretext.

      1.  Adverse Action

Defendant argues that it is entitled to summary judgment because Defendant Hutchins's initiation of the CHINS referral and petition was not an actionable adverse action.  [Doc. 67-9, p. 15].  The Court disagrees.

To prevail on an ADA and § 504 claim, a plaintiff must show that he suffered an adverse action.  Shotz v. City of Plantation, 344 F.3d 1161, 1180 (11th Cir. 2003).  To satisfy this requirement, a plaintiff must demonstrate that a reasonable person in his position would view the action in question as adverse.  Id. at 1181.  Certainly, not every unkind act will constitute an adverse action.  Id. Rather, the court must look at each alleged adverse action on a "case-by-case basis, using both a subjective and an objective standard."  Id.

This Court finds that a reasonable person would view the initiation and prosecution of the CHINS referral and petition in the Fulton County Juvenile Court as an adverse action.  Plaintiffs had to retain legal counsel to address the CHINS proceeding and faced potential fines, community service or even imprisonment.

Even though a reasonable person would view the CHINS proceeding as an adverse action, Defendant argues that accusing someone of committing a crime

they actually committed is not an adverse act.  Here, Defendant argues that

William's parents failed to timely submit documentation for dozens of William's

absences, and thus William and his parents actually violated O.C.G.A. § 15-11-

442.  [Doc. 67, p. 16].

Although at least one case supports Defendant's assertion that accusing

someone of committing conduct they actually committed cannot be considered an

adverse action, the underlying facts in this case are disputed.  Atlanta Indep. Sch.

Sys. v. S.F. ex rel. M.F., 740 F. Supp. 2d 1335, 1360 (N.D. Ga. 2010) (finding no

adverse action where the teacher accused parents of illegally surveilling the teacher

via video recording where it was undisputed through the parents' admission that

they illegally surveilled the teacher).  Here, the primary dispute between the parties

is whether William's absences were, in fact, unexcused.  Certainly, Defendant

maintains that the absences were unexcused because they were not supported by

proper documentation.  However, Plaintiffs' evidence showed that William was

absent because of his mental illness.  Importantly, Plaintiffs presented evidence

that they almost always informed (through e-mails, handwritten notes or phone

calls) a school official, whether it be the § 504 chairperson, a teacher or front office

staff, of the reason for William's absence on a particular day.  Despite this

communication, William's absences were frequently not excused.  This dispute of

material fact—whether the absences were unexcused—precludes the Court from finding as a matter of law that Plaintiffs suffered no adverse action. Accordingly, Defendant is not entitled to summary judgment on this ground.

      2.  <u>Causation</u>

Defendant next contends that Plaintiffs failed to meet the causal link requirement.  In order to establish the requisite causal connection, the plaintiff must show that the protected activity and adverse action were "not wholly unrelated."  <u>Krutzig v. Pulte Home Corp.</u>, 602 F.3d 1231, 1234 (11th Cir. 2010). "Generally, a plaintiff can show the two events are not wholly unrelated if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse . . . action."  <u>Id.</u>

The evidence in this case shows that Defendant Hutchins became aware of the protected activity no later than September 28, 2015, when William's father informed her that William's IEP was not adequate.  Moreover, Defendant Hutchins attended the IEP meetings on October 20, 2015, and October 29, 2015.  Only five days later, on November 5, 2015, Defendant Hutchins sent her supervisor a copy of the CHINS referral, which she filed with the Fulton County Juvenile Court on November 9, 2015.  [Doc. 70-1, pp. 50-51].

Despite this close temporal proximity, Defendant contends that Plaintiffs cannot show a causal relationship between the protected activity and Defendant Hutchins's decision to initiate the CHINS proceeding because "[t]he undisputed facts show that [Defendant Hutchins] was contemplating the initiation of a CHINS proceeding nearly a month before the first 504 meeting on October 20." [Doc. 67-9, p. 21]. Defendant relies on the letters Defendant Hutchins sent to William's parents beginning on September 24, 2015.

As a general rule, "[t]emporal proximity between the protected activity and the adverse action alone generally cannot show causation when [the defendant] has contemplated the adverse action before the protected activity takes place." Tucker v. Fla. Dep't of Transp., 678 F. App'x 893, 896 (11th Cir. 2017). As already stated above, Defendant relies on three letters Defendant Hutchins sent to William's parents to show that she contemplated adverse action before the protected activity. Defendant Hutchins mailed the first letter on September 24, 2015. That letter notified William's parents that William had accumulated eight unexcused absences. [Doc. 67-2, p. 96]. Although the letter notified William's parents of the Georgia Compulsory Attendance Law, O.C.G.A. § 20-2-690.1, the letter stated that Defendant Hutchins wanted to work with William's parents "in maintaining the best possible attendance record" for William. Id. Defendant Hutchins sent

13

William's parents a second letter on October 13, 2015. Id. at 97. This letter, which was largely the same as the first, informed William's parents that William had accumulated nineteen unexcused absences. Id. The letter also recognized that William's parents were contacting William's pediatrician, psychologist and Ridgeview Charter for documentation concerning William's absences. Id. In the final letter, which was dated November 3, 2015, and sent after Defendant Hutchins became aware of the protected activity, Defendant Hutchins informed William's parents, for the first time, that "unless your child attends school regularly, action will be taken by this office at the Fulton County Juvenile Court or the Fulton County Criminal Court." Id. at 98. While the letters show that Defendant Hutchins addressed attendance related issues with William's parents before she became aware of the protected activity, the letters do not undisputedly show that Defendant Hutchins was contemplating initiating a CHINS proceeding when she sent her first letter on September 24, 2015, or even her follow-up letter on October 15, 2015. The first indication Defendant Hutchins gave of pursuing legal action in the Fulton County Juvenile Court was on November 3, 2015—after she learned of William's parents protected activity. Ultimately, based on these facts, it is not undisputed that Defendant Hutchins contemplated legal action before she learned

of the protected activity.  As such, Defendant is not entitled to summary judgment as to this ground.

      3.  <u>Pretext</u>

Alternatively, Defendant argues that even if Plaintiffs can establish a prima facie case of retaliation, Defendant Hutchins had a legitimate non-discriminatory reason for filing the CHINS referral and petition.  Here, Defendant argues that the CHINS referral was not filed in retaliation but because of William's chronic absenteeism that was not supported by proper documentation.  This showing is enough to establish a legitimate non-discriminatory reason.  Thus, under the burden shifting framework, the burden returns to Plaintiffs.  Therefore, to defeat summary judgment, Plaintiffs must demonstrate that Defendant's proffered reason for its adverse action—absences and lack of documentation—was merely a pretext to mask its real reason for the adverse action:  William's parents continued requests for Defendant to provide more accommodations to William under the IDEA.  To establish pretext at the summary judgment stage, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997).

Plaintiffs contend Defendant's proffered reason is pretextual and point to various weaknesses and inconsistencies in Defendant's explanation of why Defendant Hutchins decided to file the CHINS referral.  First, William's parents provided e-mails where they notified the school of William's absence on a particular day and the reason for his absence.  Despite these e-mails, William's absences were not excused.  Second, William had twenty-two unexcused absences in the 2014-2015 school year, and Defendant Hutchins never wrote William's parents letters or threatened legal action.  She also did not file a CHINS referral. While Defendant argues that William had more absences in 2015-2016 than he did in 2014-2015, and thus the years are not comparable, the school policy requires Defendant Hutchins to send a letter to the parents after five absences and give legal notice after seven absences.  [Doc. 67-13, p. 13].  Third, Defendant's recordkeeping showed troubling inconsistencies.  The evidence showed that Defendant Hutchins sent William's parents a letter on November 3, 2015, notifying them that William had twenty-six unexcused absences.  Only three school days later, Defendant Hutchins filed the CHINS referral alleging that William had forty unexcused absences.  [Doc. 70-1, p. 55].

This Court finds that Plaintiffs have presented enough evidence to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions" in Defendant's proffered reasons for initiating the CHINS

proceedings.  The weaknesses and inconsistencies identified above suggest that

Defendant targeted William and his parents for engaging in protected activity.

Considering the facts and inferences in the light most favorable to Plaintiffs, which

this Court must do, a reasonable jury could find that but for the parents' advocacy

for William's accommodations at school, Defendant Hutchins would not have filed

the CHINS referral.  Therefore, Plaintiffs have offered sufficient evidence of

pretext to overcome Defendant's proffered legitimate reason for filing the CHINS

referral.  Because Plaintiffs have met their burden as to pretext, Defendant is not

entitled to summary judgment as to this ground.

## CONCLUSION

For the foregoing reasons, this Court **HEREBY DENIES** Defendant's

Motion for Summary Judgment [Doc. 67].  The parties are **HEREBY ORDERED**

to file the consolidated pretrial order required by Local Rule 16.4 no later than

fourteen days from the date of this Order.  The parties are notified that a failure to

comply with this Order may result in sanctions, including dismissal of the case or

entry of default judgment.  In the event a consolidated pretrial order is not filed, the

Clerk is **DIRECTED** to submit the case at the expiration of the applicable time

period.

**IT IS FURTHER ORDERED** that this matter is set for trial beginning on July 19, 2021, at 9:30 a.m.  This case is second on the trial calendar.  If the trial does not proceed on this date, this case will be placed on the trial calendar for a trial beginning on August 23, 2021, at 9:30 a.m.  The Court also has trials beginning on September 20, 2021.  The case will be placed on each of these calendars until reached.

**SO ORDERED** this 10th day of May, 2021.

_____

**J. P. BOULEE**
United States District Judge